**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| X-Cel Sales LLC, an Arizona Limited Liability Company,<br><br>    Plaintiff,<br><br>vs.<br><br>A.O. Smith Corporation, a Delaware corporation,<br><br>    Defendant. | No. CV 11-1082-PHX-GMS<br><br>**ORDER** |

Defendant A.O. Smith Corporation brings a motion to transfer venue (Doc. 6) and a motion to dismiss (Doc. 7). It first asks the Court to rule on the motion to transfer and, if the Court denies that motion, to rule on the motion to dismiss. For reasons discussed below, the Court denies both motions.

**BACKGROUND**

Defendant A.O. Smith Corporation manufactures water heaters. (Doc. 1 at ¶ 5). Plaintiff X-Cel Sales, LLC is a former distributor of Defendant's products. (*Id.* at ¶ 12). According to the Complaint, Defendant breached a series of oral and written agreements with Plaintiff and fraudulently represented to Plaintiff, one of Defendant's sales representatives, that all of Defendant's sales representatives distributing their various product lines were bound by the same fixed pricing plan. (*Id.* at ¶¶ 68–103). While Defendant manufactures its own "A.O. Smith" water heaters, Defendant acquired two other manufacturers "State" and "American," and since the acquisition has sold three brands of water heaters. (*Id.* at ¶ 26).

Because Defendant's sales representatives were non-exclusive distributors in overlapping regions, Defendant established a "pricing parity" policy in their Market Area Pricing Sheets ("MAPS"). (*Id.* at ¶¶ 27–31). MAPS assured sales representatives that competitors in their respective regions would sell water heaters at fixed prices. (*Id.* at ¶ 31).

In 1995, Plaintiff began selling "A.O. Smith" brand water heaters in Arizona and Nevada as Defendant's sales representative. (Doc. 1 at ¶¶ 17, 25). In February 2006, parties signed a Sales Representation Agreement ("SRA") that governed their business relationship. (*Id.* at ¶ 18). In March 2006, Plaintiff agreed to sell in Defendant's Colorado market[1] allegedly based upon promises made by Defendant's Senior Vice President of Wholesale Sales. (*Id.* at ¶¶ 23–24). The promises included that Plaintiff would have a secure business relationship with Defendant for five years and that Defendant would reimburse Plaintiff for leasing expenses. (*Id.*).[2] In 2009, Defendant began an incentive bonus program for its sales representatives called the Representative Agency Compensation Program. (*Id.* at ¶ 19). Plaintiff claims that their business relationship was governed by this program, MAPS, the 2006 SRA, as well as their other agreements, and that the parties would often modify their agreements orally. (*Id.* at ¶ 20).

Plaintiff alleges that Defendant allowed Marketing Pros and competitors in Plaintiff's region to sell certain "State" and "American" brand heaters at discounted prices, contrary to MAPS. (Doc. 1 at ¶¶ 32, 35). Plaintiff alerted Defendant of improper pricing in 2007 and 2009, and both times Plaintiff was assured that Defendant followed true pricing parity. (*Id.* at ¶¶ 38–39, 44–46).

In April 2010, parties signed a new SRA. (Doc. 1 at ¶ 49). Plaintiff was terminated as a sales representative on June 29, 2010. (*Id.* at ¶ 53). Plaintiff alleges that Defendant

---

[1] Plaintiff later joined Defendant's Wyoming market, but it is unspecified as to when. (Doc. 1 at ¶25).

[2] According to the Complaint, "Mr. Margonia . . . affirmatively promis[ed] [Plaintiff] that it would be 'untouchable' at A.O. Smith for the next five years." (Doc. 1 at ¶23).

induced Plaintiff to sign the 2010 SRA solely to obtain a release in order to terminate Plaintiff. (*Id.* at ¶ 49).

Plaintiff filed a complaint containing six counts alleging breach of contract, fraud, and negligence based on the above allegations. (Doc. 1 at ¶¶ 61–103).

**DISCUSSION**

**I.     Motion to Transfer Venue**

    **A.     Legal Standard**

Defendant moves to have the Court transfer this action to the Middle District of Tennessee pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Defendant has the burden of showing that the action should be transferred under § 1404(a). *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497–99 (9th Cir. 2000) (motion to transfer venue denied because of state public policy against enforcing forum selection clauses and "after weighing the relevant factors under the requisite 'interests of justice' analysis" ); *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) ("Savage had the burden to justify by particular circumstances that the transferor forum was inappropriate."). Indeed, Defendant "must make a strong showing of inconvenience to warrant upsetting [Plaintiff's] choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *see N. Acceptance Trust v. Gray*, 423 F.2d 653, 654 (9th Cir. 1970) (stating that "substantial weight" should be given to the plaintiff's choice of forum); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (stating that "the plaintiff's choice of forum should rarely be disturbed"). Defendant has not met this burden.

    **B.     Analysis**

        **1.     Forum Selection Clause**

Defendant states the SRA includes a forum selection clause: "[Plaintiff] irrevocably consents to the jurisdiction and venue of the United States District Court for the Middle District of Tennessee . . . for the purpose of any litigation to which [Defendant] may be a

1 party and which concerns this Agreement." (Doc. 7, Ex. 3 at ¶ 17). The language in the SRA, however, does not make Tennessee's jurisdiction exclusive. It states that the Plaintiff consents to the jurisdiction of Tennessee and that Plaintiff cannot question Tennessee's personal jurisdiction over Plaintiff; it does not state that all claims arising under the SRA must be filed in Tennessee.

Forum selection clauses do not establish exclusive venue if they are permissive rather than mandatory. *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 763 (9th Cir. 1989). A forum selection clause denotes mandatory jurisdiction if it includes "exclusive language." *N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995) (citing *Docksider*, 875 F.2d at 764) ("Venue of any action brought hereunder shall be deemed to be in [this forum]" was held to contain mandatory language); *Id.* at 1036 (citing *Hunt Wesson Foods, Inc., v. Supreme Oil Co.*, 817 F.2d 75, 76 (9th Cir. 1987) (ruling that "[this forum] 'shall have jurisdiction over the parties in any action' arising out of the contract" or "shall be enforceable by [this forum]" contain permissive language). Consent to a forum does not constitute a forum selection clause. Therefore, the SRA does not establish exclusive venue in the Middle District of Tennessee.

### 2. Section 1404 (a)

Although this action might have been brought in Tennessee, under 28 U.S.C. § 1404(a), a venue transfer to Tennessee would not alleviate the inconvenience of parties or witnesses, or serve the interests of justice.[3]

---

[3] In addition to the three factors in § 1404(a), "the court may consider: (1) the location where the agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of form, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones*, 211 F.3d at 498–99. The Court should also consider public interest factors including "court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict

- 4 -

Plaintiff's cause of action arises in Arizona because the impact or harm from Defendant's alleged torts and breaches of contract occurred in Arizona. (Doc. 11 at 8:7–10). The negotiation and signing of the SRAs have likewise occurred in Arizona. (Doc. 11 at 6:16–19).

While the parties have witnesses in Arizona and Tennessee respectively, the non-party witnesses are mostly in Arizona or in Arizona's neighboring states. Plaintiff resides in Arizona. (Doc. 1 at ¶ 1). Plaintiff's potential non-party witnesses reside either in Arizona or Nevada. (Doc. 11 at 9:15–20). Defendant's potential witnesses are employees residing in Tennessee. (Doc. 6 at 12:1–5). Though Arizona does not have the power to compel non-party witnesses from other states, it would be more convenient for the non-party witnesses to testify in Phoenix because they are in states surrounding Arizona. (Doc. 11 at 11:15–20). Arizona will provide less inconvenience to potential witnesses overall.

While the SRA[4] designates that Tennessee state law governs their business agreement, and Tennessee federal courts are more familiar with Tennessee law, this Court often applies other states' laws due to diversity jurisdiction. (Doc. 7, Ex. 3 at ¶ 12). The contract law of Arizona and Tennessee is similar, and because Plaintiff disputes whether the SRA controls their agreement, it is unclear whether Tennessee state law truly controls. (Doc. 11 at 13:7–12).

Defendant has not met its burden of establishing that Tennessee will be more convenient for both parties. Therefore, in the interests of justice, the Motion for Venue

---

of laws . . . and the unfairness of burdening citizens in an unrelated forum with jury duty." *Decker*, 805 F.2d at 843 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

[4]The Court has taken judicial notice of SRAs 2006 and 2010 because they are documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (alteration in original). Plaintiff still asserts that their business relationship is not controlled solely by those documents. (Doc. 1 at ¶¶ 18–21, 49; Doc. 10 at 9:15–21, 10:1–3; Doc. 11 at 4:22–25).

1 | Transfer is denied. Granting the motion would "merely shift rather than eliminate the inconvenience." *Decker Coal*, 805 F.2d at 843.

**III. Motion to Dismiss**

    **A. Legal Standard**

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

    **B. Analysis**

        **1. Rule 12(b)(6)**

Defendant argues that the SRA includes three clauses that bar Plaintiff from bringing this suit, namely: 1) A mutual release clause that releases Defendant from being sued by Plaintiff for any known or future claims, 2) a termination clause that eliminates any obligation to compensate Plaintiff for potentially earned sales or losses after the termination of their business relationship, and 3) an integration clause that makes the SRA the entire agreement between the two parties. (Doc. 7, Ex. 3 at ¶¶ 19, 9(e), 14).

Plaintiff argues that the entire 2010 SRA was obtained by fraud and misrepresentation and that, under either Tennessee and Arizona law, release clauses induced by fraud are unenforceable. *Evans v. Tillett Bros. Const. Co.*, 545 S.W.2d 8, 11 (Tenn. Ct. App. 1976); *Dansby v. Buck*, 92 Ariz. 1, 8, 373 P.2d 1, 6 (1962). Plaintiff further claims that under both states' laws, release clauses only cover claims "which are in existence and within [the parties'] contemplation" at the time the release is signed. *Jackson v. Miller*, 776 S.W.2d 115, 118 (Tenn. Ct. App. 1989) (quoting *Cross v. Earls*, 517 S.W.2d 751, 752 (Tenn. 1974); *see Dansby*, 92 Ariz. at 8, 373 P.2d at 12. Plaintiff alleges it was not aware of claims against the Defendant at the time of signing the 2010 SRA, so the release clause does not bar them from bringing this suit. (Doc. 10 at 12:8–12).

Furthermore, though the SRA is in writing, when a contract's "terms are indefinite and ambiguous, or if the evidence shows that more than one inference can be drawn . . . or if there is evidence of circumstances and relations outside of the written agreement . . . a question of fact arises which must be determined by the jury." *Hendrix v. City of Maryville*, 431 S.W.2d 292, 297 (Tenn. Ct. App. 1968); *see Johnson v. Earnhardt's Gilbert Dodge, Inc.*, 212 Ariz. 381, 385–86, 132 P.3d 825, 829–30 (2006). Because parties dispute the interpretation of the termination and release clauses pertaining to lost commissions and whether their business relationship was solely governed by the SRA under the integration clause, there are issues of fact which cannot be decided on a motion to dismiss.

### 2. Rule 9(b)

Defendant asserts that Plaintiff has not sufficiently pleaded its fraud claims under Rule 9(b), because "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Under this rule a plaintiff "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.").

Plaintiff, however, has sufficiently alleged the surrounding circumstances constituting fraudulent behavior by the Defendant. It includes the names of Defendant's employees, price discrimination made between Marketing Pros and Plaintiff, MAPS violations, the continued representations of assurance to Plaintiff by Defendant, and relative dates of each misrepresentation or fraudulent action. (Doc. 1 at ¶¶ 17–66). For example, the Complaint states that, "In 2007, after X-Cel discovered a discrepancy in pricing, Defendant represented to X-Cel that it was '100% committed to true pricing parity' . . . Additionally, each year, Defendant provided X-Cel with [MAPS] for each brand, in which Defendant represented that, within X-Cel's territory, the [three] brands were priced exactly the same." (*Id.* at ¶ 84). "In September of 2009 . . . A.O. Smith sent X-Cel an email . . . reflect[ing] that . . . State brand heaters were now being sold . . . for less than what was authorized under the [MAPS] and, hence, less than what X-Cel was previously permitted to sell . . . . This was clearly inconsistent with A.O. Smith's representations and policy." (*Id.* at ¶¶ 45–47). These statements meet the requirements of Rule 9(b).

## CONCLUSION

Defendant has "failed to meet its burden of showing that [Tennessee is] the more appropriate forum for the action." *Jones*, 211 F.3d at 499. Defendant has also failed to show that Plaintiff's claims are implausible under Rule 12(b)(6) and that Plaintiff failed to allege facts under Rule 9(b). The text of SRA 2010 is insufficient at this stage to dismiss Plaintiff's claims because of various disputes of fact.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Transfer (Doc. 6) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss (Doc. 7) is **DENIED**.

DATED this 31st day of January, 2012.

*A. Murray Snow*
G. Murray Snow
United States District Judge