**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| X-Cel Sales, LLC, an Arizona Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>A. O. Smith Corporation, a Delaware Corporation,<br><br>Defendant. | No. CV-11-01082-PHX-GMS<br><br>**ORDER** |

Defendant A. O. Smith Corporation ("A. O. Smith") brings a Motion for Summary Judgment. (Doc. 38.) For the reasons discussed below, the motion is denied in part and deferred in part.

## BACKGROUND

A. O. Smith, a Delaware corporation based out of Tennessee, manufactures residential and commercial water heaters under three brand names: A. O. Smith, State, and American. (*Id.* at 2.) A. O. Smith distributes its products using a network of independent regional sales representatives. (*Id.*) Sales representatives are entitled to commissions on the sales they make, with the rate for the commission set in a sales representative agreement ("SRA") between A. O. Smith and the representative. (Doc. 38 at 2.) Plaintiff X-Cel Sales ("X-Cel") served as one of these sales representatives, attending mostly to the Arizona and Nevada regions, for a period of fifteen years. X-Cel

1  was terminated by A. O. Smith in June 2010. (Doc. 44 at 2.)

2  X-Cel filed suit against A. O. Smith in 2011, asserting claims for breach of implied contract, promissory estoppel, fraud or intentional misrepresentation, fraudulent concealment and nondisclosure, negligence, and negligent misrepresentation. (Doc. 1-1 at 15–22.) The primary allegation on which X-Cel bases its claims is A. O. Smith's alleged underpricing of water heaters in sales contracts negotiated by sales representatives other than X-Cel. According to X-Cel, A. O. Smith adopted a "firm pricing policy" in 2006 which required pricing parity with regard to all three of its water heater brands. (Doc. 44 at 3.) This pricing scheme was set out in Market Area Pricing sheets ("MAPs") provided by A. O. Smith. (*Id.*) X-Cel claims that A. O. Smith systematically allowed another representative, Marketing Pros, to sell water heaters at prices below what was set out in the MAPs. (*Id.* at 4.) X-Cel further alleges that when it expressed doubt to A. O. Smith that all water heaters were being sold in conformity with the prices set out in the MAPs, A. O. Smith repeatedly assured X-Cel that it was, in fact, adhering to those prices. (*Id.*)

In 2010, X-Cel entered into a new SRA with A. O. Smith, ostensibly for the purpose of adjusting the region that X-Cel was responsible for servicing. (*Id.*) However, X-Cel asserts that it would not have entered into this SRA if A. O. Smith had disclosed the truth about its uneven enforcement of the prices set out in the MAPs. (*Id.*) Furthermore, X-Cel claims that, two months after entering into the SRA, it received notice from A. O. Smith that this practice of underpricing "had, in fact, been happening for some time and [was] actually widespread." (*Id.* at 5.) Shortly after this revelation, X-Cel was terminated from its position as independent sales representative. (*Id.*)

X-Cel also claims that in 2006, it entered into an oral agreement with A. O. Smith to move into the Colorado market. (*Id.* at 3.) X-Cel states that it was reluctant to do so because of the significant capital it would have to invest in the expansion, but was ultimately persuaded by A. O. Smith's James Margoni, who promised that X-Cel would "be untouchable for five years" if it acquiesced. (*Id.*) X-Cel alleges that it entered into a five-year warehouse lease in Denver and incurred other expenses in reliance on Mr.

Margoni's oral promise. (*Id.*)

A. O. Smith now asserts that it is entitled to summary judgment on each of X-Cel's claims on five grounds: (1) because no duty can be premised on A. O. Smith's failure to follow its own internal pricing policies, X-Cel's claims of breach of implied contract, fraud, fraudulent concealment, negligence, and negligent misrepresentation must fail; (2) X-Cel has no standing to assert a price discrimination claim because it never bought a water heater; (3) X-Cel has failed to show causation; (4) X-Cel's promissory estoppel claim is barred by the statute of frauds; and (5) the release clause in the 2010 SRA bars all of X-Cel's claims. (Doc. 38 at 1.)

In response, X-Cel moves under Rule 56(d) to defer consideration of A. O. Smith's motion for summary judgment because it has not yet had an adequate opportunity to obtain sufficient discovery necessary to inform its response in opposition. (Doc. 44 at 1.)

**DISCUSSION**

**I.     Legal Standard**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Jesinger*, 24 F.3d at 1130. In addition, the dispute must be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there

is a genuine issue for trial." FED. R. CIV. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995); *see also* Rule 1.10(l)(1), Rules of Practice of the United States District Court for the District of Arizona ("Any party opposing a motion for summary judgment must . . . set[] forth the specific facts, which the opposing party asserts, including those facts which establish a genuine issue of material fact precluding summary judgment in favor of the moving party."). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248). If the nonmoving party's opposition fails to specifically cite to materials either in the court's record or not in the record, the court is not required to either search the entire record for evidence establishing a genuine issue of material fact or obtain the missing materials. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028–29 (9th Cir. 2001); *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417–18 (9th Cir. 1988).

When a summary judgment motion is filed "before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule [56(d), formerly] 56(f) motion fairly freely." *Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003). However, the burden is on the nonmoving party to show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998). The request to defer consideration must "clearly show 'what information is sought and how it would preclude summary judgment.'" *Spear v. United States*, No. CIV. 11-1742-PHX-PGR, 2012 WL 2029747 at *2 (D. Ariz. June 6, 2012) (citing *Margolis*, 140 F.3d at 853). More specifically, the nonmoving party must set forth in affidavit form the specific facts it hopes to elicit from further discovery and show that these facts are essential to overcoming summary judgment. *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan*

*Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).

## II. Discussion

### A. Choice of Law

Federal courts apply the choice-of-law rules of the forum state. *MRO Commc'ns., Inc. v. AT & T Corp.*, 197 F.3d 1276, 1282 (9th Cir. 1999). Arizona courts follow the Restatement (Second) Conflict of Laws to determine which state's laws apply. *Cardon v. Cotton Lane Holdings, Inc.*, 173 Ariz. 203, 207, 841 P.2d 198, 202 (1992); *Magellan Real Estate Inv. Trust v. Losch*, 109 F. Supp. 2d 1144, 1155 (D. Ariz. 2000).

Under § 187 of the Restatement, a choice-of-law clause found in a contract governs all claims arising out of the contract. The 2010 SRA here contains a choice-of-law provision specifying that Tennessee law governs the validity, interpretation and enforcement of the contract's terms. (Doc. 39-3 at 5.) Therefore, X-Cel's breach of implied contract claim is governed by Tennessee law.

However, promissory estoppel sounds in equity rather than contract. *Double AA Builders, Ltd. V. Grand State Const., L.L.C.*, 114 P.3d 835, 853, 210 Ariz. 503, 511 (2005). The closest applicable Restatement section for equitable remedies is § 221, for restitution, which calls for application of the law with the state which has the most significant relationship to the occurrence. Here, because Arizona is the state where X-Cel resides, where the majority of the relationship between the parties took place, and where the alleged harm was inflicted, Arizona law applies.

The remainder of X-Cel's claims sound in tort. Section 145 of the Restatement directs a court applying choice-of-law principles to a tort claim to consider the place of injury, the place of conduct, the domicile of the parties, and the place where the parties' relationship is centered. The place of injury for X-Cel's tort claims is Arizona, Arizona is X-Cel's place of domicile, and the majority of X-Cel and A. O. Smith's relationship took place in Arizona. Therefore, Arizona law applies to the balance of X-Cel's tort claims.

### B. Under Tennessee and Arizona Law, a Duty Can Be Based on a Defendant's Violation of its Own Internal Policies.

A. O. Smith contends that it is entitled to summary judgment on X-Cel's claims that are based on the existence of a duty, because it owed no duty to X-Cel to follow its own internal pricing policy.[1] But this argument misses the point. The question at issue is not whether A.O. Smith had some obligation as a matter of law to follow its own policies; the question is whether A.O. Smith represented to X-Cel that it was following its own policies when in fact it was not. This is the allegation that gives rise to the causes of action for negligence, fraud, and breach of implied contractual duty.

Under Tennessee law, the duty of good faith and fair dealing is implied in every contract, and what it consists of varies based on the circumstances. *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996). Because A. O. Smith and X-Cel had a contract and because X-Cel has alleged that A.O. Smith made misrepresentations of fact to it that pertained to contract performance, X-Cel has stated a claim that A. O. Smith has breached its contract under Tennessee law. Therefore, A. O. Smith's burden on this motion for summary judgment is to produce evidence that it did not, in fact, make misrepresentations to X-Cel. A. O. Smith has failed to do this, instead devoting its motion to the argument that it could owe X-Cel no duty based on breach of internal policies. As such, A. O. Smith has failed to meet its burden, and its motion for summary judgment is denied on the claim of breach of implied contract.

---

[1] The Court understands this argument by Defendant to encompass Plaintiff's claims for breach, negligence, negligent representation, fraud and fraudulent representation. While the Court understands that the breach and negligence claims require that Plaintiff demonstrate that Defendant owed it some kind of duty, Defendant's argument also appears to assume that fraud-based claims are duty-based. That assumption is incorrect. *See Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 498, 38 P.3d 12, 36 (2002) (stating that no duty must be established to prove a claim of fraudulent misrepresentation); *Nielson v. Flashberg*, 101 Ariz. 335, 338–39, 419 P.2d 514, 517–18 (1966) (setting out the elements of fraud, which do not include a duty owed by defendant). A.O. Smith's motion as it relates to fraud and fraudulent representation (to the extent that those claims are different) is, therefore, denied.

As for the tort claims, under Arizona law, negligence and negligent representation require a showing of "a duty owed." *Van Buren v. Pima Cmty. Coll.*, 113 Ariz. 85, 87, 546 P.2d 821, 823 (1976). A duty arises where "the relationship of the parties was such that the defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff." *Bloxham v. Glock*, 203 Ariz. 271, 274, 53 P.3d 196, 199 (Ct. App. 2002) (citing *Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 356, 706 P.2d 364, 368 (1985)). Again, X-Cel has alleged that the parties here were engaged in a relationship that was defined by certain representations made by A.O. Smith to X-Cel, upon which X-Cel relied. To the extent that such a relationship is and can be separate from contract, and Defendant does not assert in its motion that it is not,[2] the Court cannot conclude as a matter of law that such a relationship gives rise to no duty.

A. O. Smith has failed to meet its summary judgment burden of showing that there is no material issue of fact as to whether it owed X-Cel a duty. As such, A. O. Smith's motion for summary judgment on this ground is denied.

### B. There is a Material Issue of Fact as to Whether the Margoni Promise Falls Within the Statute of Frauds.

Under Arizona law, promissory estoppel involves a promise which induces the promisee to rely to his detriment and which the promisor should reasonably have foreseen would cause the promisee to so rely. *Arnold & Assocs., Inc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d 1013, 1023 (D. Ariz. 2003) (citing *Tiffany Inc. v. W.M.K. Transit Mix, Inc.*, 16 Ariz. App. 415, 419, 493 P.2d 1220, 1224 (Ct. App. 1972)). However, Arizona's Statute of Frauds provides that:

> No action shall be brought in any court . . . unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and

---

[2] The Court notes that the Arizona doctrine of economic loss may preclude X-Cel from recovering on both contract and tort theories, to the extent that X-Cel seeks recovery for economic losses unaccompanied by physical injury to persons or property. *Flagstaff Affordable Hous. Ltd. P'ship v. Design Alliance, Inc.*, 223 Ariz. 320, 323, 223 P.3d 664, 667 (2010). However, because the parties have not briefed the issue, it need not be discussed on this motion for summary judgment.

- 7 -

  signed by the party to be charged, or by some person by him thereunto lawfully authorized . . . [u]pon an agreement which is not to be performed within one year from the making thereof.

A.R.S. §44-105(4) (2003). Thus, a promissory estoppel claim involving a promise that cannot be performed within one year must be in writing to be enforceable.

  A. O. Smith contends that X-Cel cannot recover on its theory of promissory estoppel because it is based on an oral promise made by James Margoni that X-Cel would be "untouchable for five years," which falls within the statute of frauds. X-Cel does not contest this point, but rather argues that the statute of frauds should not be enforced against it because of the doctrine of part performance.

  In order for the doctrine of part performance to take a promise out of the statute of frauds, the alleged acts must be "consistent only with the existence of a contract and inconsistent with other explanations such as . . . an existing relationship between the parties." *Owens v. M.E. Schepp Ltd. P'ship*, 218 Ariz. 222, 227, 182 P.3d 664, 670 (2008). A. O. Smith argues that X-Cel has failed to demonstrate that its actions "unequivocally refer" to the Margoni promise. *Id.* at 228. In fact, X-Cel has pointed to evidence that would allow a reasonable juror to find that X-Cel's actions were consistent only with the existence of the Margoni promise, thus taking the promise out of the statute of frauds. For example, X-Cel cites to evidence in the record that it incurred the expense of setting up operations in Colorado, including the costly lease of a warehouse in Denver, to serve the Colorado market in exchange for Margoni's promise. (Doc. 45-3 at 6.) It further points to evidence that it was initially reluctant to take such steps and did so only because Margoni assured it that it would be "untouchable for five years." (*Id.* at 5–6.)

  X-Cel's evidence that it was initially "very hesitant" to take over the Colorado market, but that it eventually did so, incurring significant expenses in the process, is sufficient evidence for a juror to find that X-Cel's actions in the Colorado market unequivocally referred to an oral promise by Margoni. Based on this evidence, a juror could find that X-Cel's part performance of entering the Colorado market took the

Margoni promise out of the statute of frauds. As such, A. O. Smith has failed to demonstrate that there is no material issue of fact as to the enforceability of the Margoni promise. A. O. Smith's motion for summary judgment on this ground is denied.

A. O. Smith also argues that X-Cel's promissory estoppel claim is barred by the merger clause in the SRA. However, as discussed below in Part II.E, A. O. Smith has failed to demonstrate that there is no issue of material fact as to the enforceability of that merger clause. A. O. Smith's motion for summary judgment on the promissory estoppel claim is therefore denied.

### C. Because This is Not a Price Discrimination Claim, X-Cel Has Standing and Has Demonstrated Causation Sufficient to Survive Summary Judgment.

A. O. Smith argues that X-Cel's claims should be dismissed because as a sales representative, it never actually bought one of A. O. Smith's products, and thus lacks standing to bring a price discrimination claim. A. O. Smith apparently believes that X-Cel's claims are price discrimination claims under the guise of contract and tort law, and cites only to cases deciding claims under the Clayton and Robinson–Patman Acts for its assertion that X-Cel lacks standing. (Doc. 38 at 10.)  However, none of X-Cel's claims were brought under any antitrust or price discrimination statutes, and no case law cited to by A. O. Smith holds that claims alleging discriminatory pricing can be brought only under those statutes. Nor is there any basis for the assertion that X-Cel was required to purchase a water heater to have standing for its contract and tort claims. As such, A. O. Smith's motion for summary judgment on this ground is denied.

### D. X-Cel Has Made Specific Assertions Setting out the Evidence it Seeks on the Issue of Causation.

A. O. Smith also alleges that it is entitled to summary judgment because X-Cel's claims are "impermissibly speculative." Without citing to any source, A. O. Smith sets

1  out six facts that it asserts X-Cel needs to establish in order to recover damages.[3] (Doc.
2  38 at 10.) While A. O. Smith is correct that X-Cel must show causation in order to
3  succeed, all that X-Cel must do to overcome summary judgment is point to evidence in
4  the record sufficient to allow a reasonable finder of fact to find in its favor.

5    X-Cel requests deferral of summary judgment consideration on this issue so that it
6  may gather more evidence to marshal against A. O. Smith's motion. (Doc. 44 at 11.) X-
7  Cel presents an affidavit in which X-Cel's counsel specifically sets out the type of
8  evidence that X-Cel seeks—depositions of former X-Cel customers—and how the
9  evidence will defeat summary judgment—by testimony that X-Cel's distributors were
10 undercut by other distributors serviced by Marketing Pros, who obtained better pricing
11 from A. O. Smith, thus causing X-Cel to lose sales. (*Id.*; Doc. 44-1 at ¶ 16.)

12   As such, X-Cel's request to defer summary judgment while it conducts discovery
13 on this issue is granted.

### E. There is a Material Issue of Fact Regarding Whether the 2010 SRA Was Fraudulently Induced

16   A. O. Smith contends that all of X-Cel's claims are barred by a release clause in
17 the 2010 SRA that purports to release both parties from claims for damages, among other
18 causes of action.[4] It acknowledges X-Cel's allegation that the entire SRA was

---

[3] A. O. Smith contends that X-Cel must establish each of the following: "(1) X-Cel quotes on of its distributors a price for 'A. O. Smith' brand water heaters; (2) the distributor bids a job to a builder or contractor based on the price given to X-Cel by A. O. Smith; (3) Marketing Pros . . . quotes one of its distributors a set price for 'State' or 'American' brand water heaters that is lower than the price A. O. Smith gave to X-Cel; (4) the builder or contractor decides to purchase from the Marketing Pros distributor solely because the price the Marketing Pros distributor offered was lower (and not because of service, brand loyalty, personal relationships or other reasons); and (6) the difference in price A. O. Smith offered to Marketing Pros and X-Cel was not attributable to Marketing Pros submitting a request for price discount that was granted and X-Cel not having done so." (Doc. 38 at 10.)

[4] The release clause states that "[t]he parties acknowledge that, at the date hereof, neither of them has any claim for damages, reimbursement of expenses, breach of contract, nor any claim of any other nature against the other party (except for commissions, allowances, offsets and adjustments for sales of Products by Representative) and in consideration of the other entering in to this Agreement, any and all unknown claims of each party are hereby fully and forever discharged and released."

1  fraudulently induced, but argues that it is entitled to summary judgment because X-Cel
2  has produced no evidence of fraud. (Doc. 38 at 13.)

3  As discussed above in Part II.A, because of the choice-of-law clause, Tennessee
4  law applies to the issue of the SRA's enforceability. Under Tennessee law, a party
5  asserting fraudulent inducement must prove that "the defendant (1) made a false
6  statement concerning a fact material to the transaction (2) with knowledge of the
7  statement's falsity or utter disregard for its truth and (3) with the intent of inducing
8  reliance on the statement, (4) the statement was reasonably relied upon, and (5) an injury
9  resulted from this reliance." *Baugh v. Novak,* 340 S.W.3d 372, 388 (Tenn. 2011).

10  "Cases where intent is a primary issue generally are inappropriate for summary
11  judgment unless all reasonable inferences that could be drawn from the evidence defeat
12  the plaintiff's claims." *Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1220 (9th Cir. 1980).
13  Nevertheless, the party opposing summary judgment must produce evidence that
14  reasonably supports each element of the fraud claim. *Id.*; *Hispamoto, S.A. v. Kawasaki*
15  *Motors Corp., USA*, 874 F.2d 816 (9th Cir. 1989) (unpublished table decision).

16  Tennessee courts permit fraud to be "proved by evidence wholly circumstantial."
17  *Jones v. Seal*, 56 Tenn. App. 593, 598, 409 S.W.2d 382, 385 (Ct. App. 1966) (citing
18  *Anderson v. Nichols*, 39 Tenn. App. 503, 517, 286 S.W.2d 96, 102 (Ct. App. 1955)).
19  "Where fraud is to be shown by circumstantial evidence, such evidence should be
20  considered in its entirety without giving undue importance to isolated facts; although
21  each circumstance alone may be trivial and unconvincing, the combination of all the
22  circumstances considered together may furnish irrefragable and convincing proof of
23  fraud." *Id.* The burden is still on the plaintiff to produce evidence that "clearly
24  establish[es] the inference of fraud." *Id.*

25  X-Cel points to evidence in the record that, on multiple occasions, A. O. Smith
26  made affirmative representations that it was enforcing its pricing policy (Doc. 45-1 at ¶¶
27  27–28) when in fact, it was systematically allowing Marketing Pros to sell products at

---

28  (Doc. 39-3 at 6.)

- 11 -

1    prices lower than those set out in the MAPs and accepted by X-Cel (*id.* at ¶¶ 45–48). X-
2    Cel also points to evidence that the uneven pricing had begun as early as 2007, (*id.* at ¶¶
3    26–27), and that each time it brought its concerns to A. O. Smith, A. O. Smith responded,
4    allegedly untruthfully, that it was still "committed to pricing parity," (*id.* at ¶¶ 27–28). X-
5    Cel further points to evidence that A. O. Smith terminated X-Cel within two months of
6    entering into the 2010 SRA, (*id.* at ¶¶ 30, 40), and that the termination occurred one week
7    after A. O. Smith admitted widespread pricing discrepancies, (*id.* at ¶¶ 35–40).

8        The evidence produced by X-Cel is enough to allow a jury to find by
9    circumstantial evidence that A. O. Smith made a material false statement to X-Cel while
10   knowing that the statement was false and intending for X-Cel to believe it and to renew
11   its relationship with A. O. Smith, by way of a new SRA, in reliance on it. The evidence
12   that A. O. Smith terminated X-Cel shortly after executing the 2010 SRA and admitting its
13   wrongdoing is sufficient for a jury to infer that A. O. Smith had an ulterior motive.
14   Because X-Cel has evidence that it worked with A. O. Smith for fifteen years and thus
15   had no reason to doubt its assurances, (*id.* at ¶ 29), a jury could find that X-Cel's reliance
16   on A. O. Smith's statements was reasonable. Finally, X-Cel produced evidence that it
17   would not have entered into the 2010 SRA if A. O. Smith had not made such statements.
18   (*Id.* at ¶ 32.) X-Cel has therefore demonstrated that there is a material issue of fact
19   regarding whether its commitment to the 2010 SRA was fraudulently induced.

20       Because this material issue of fact exists, the Court cannot hold as a matter of law
21   that the 2010 SRA bars all of X-Cel's claims against A. O. Smith. A. O. Smith's motion
22   for summary judgment on this ground is denied. Because this issue of fact on the
23   unenforceability of the 2010 SRA precludes a grant of summary judgment, the Court
24   need not reach the issue of the release clause's scope.

25   **CONCLUSION**

26       A. O. Smith has failed to show that, as a matter of law, it owed no duty to X-Cel
27   based on its own representations about its internal policies. As such, its motion for
28   summary judgment is denied as to X-Cel's claims of breach of implied contract, fraud,

fraudulent concealment, negligence, and negligent misrepresentation. Furthermore, it has failed to demonstrate that there is no issue of material fact as to whether the Margoni promise falls within Arizona's statute of frauds. Thus, its motion for summary judgment on X-Cel's claim of promissory estoppel is denied. In addition, A. O. Smith has failed to demonstrate that no issue of material fact exists as to whether the 2010 SRA was fraudulently induced. Therefore, its motion for summary judgment on the ground that X-Cel's claims are barred by the 2010 merger clause is denied. Finally, while A. O. Smith has met its burden of showing that there currently exists no issue of material fact regarding X-Cel's lack of causation for its claims, X-Cel has sufficiently made a case that summary judgment on that issue should be deferred until X-Cel has had an opportunity to gather more evidence. Therefore, summary judgment on the issue of causation is denied without prejudice so that A. O. Smith may raise it again when discovery has closed.

**IT IS THEREFORE ORDERED** that A. O. Smith's Motion for Summary Judgment (Doc. 38) is **DENIED IN PART** and **DENIED WITHOUT PREJUDICE** as to the issue of causation.

Dated this 24th day of October, 2012.

/s/ A. Murray Snow
G. Murray Snow
United States District Judge